## W. L. Honnold, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 72090.   Promulgated December 28, 1937.

*Ellsworth C. Alvord, Esq.*, and *Karl Riemer, Esq.*, for the petitioner.

*Isador Graff, Esq.*, for the respondent.

1192

**OPINION.**

LEECH: The petitioner's case rests solely on whether or not the income received by him in 1930 from the corporation was community income. To be such it must have been derived from community property acquired subsequent to July 29, 1927, or from salaries,

wages, and fees earned by him on and after that date. Civil Code of California, sec. 161 (a) ; *Clara B. Parker, Executrix*, 31 B. T. A. 644.

The position of the petitioner is that the income which he received represented "compensation for some consideration equivalent or similar to services, currently rendered by or passing" from him "to the company" and not, as the respondent has held, and as he here contends, "from a capital asset owned by him since 1917."

It would seem to beg the question to argue that the compensation received by the petitioner in 1930 was consideration for something "equivalent or similar" to services. In order to constitute community income such amounts must have been derived from community property acquired subsequent to July 29, 1927, or from salaries, wages and fees, not "equivalent or similar" to, but as *such*, which must have *actually* been earned after that date. The stipulated facts are that the petitioner not only rendered no services in 1930 but that he could not even have been required to do so. Therefore, we see nothing in the record upon which to predicate any reasonable conclusion that such amount was "earned" by him after July 29, 1927. *Duboff* v. *Davies* (1932), 256 N. Y. S. 17.

Petitioner argues that the contract under which he was made a permanent director of the corporation did not create a property right in him but merely provided for a continuing relationship between the corporation and him, similar to that existing between a lawyer and his client, because of which relationship petitioner currently earned the contested funds. He says such contract created no property right because of the limitations and uncertainties as to his receipts thereunder and the restrictions against assignability. Undoubtedly certain such conditions affecting petitioner's rights under the contract were there imposed. But those conditions did not change the legal status of the right petitioner received as such under the contract. They did no more than measure its quantum. See *Carson Estate Co.*, 31 B. T. A. 607; affd., 80 Fed. (2d) 1007.

The relationship between petitioner and those interested in the organization of the corporation, and later the corporation itself, may have been similar to that of lawyer and client, but the so-called contingent fee petitioner was to receive for services was paid in 1917 when those services, which were all that petitioner ever rendered or agreed to render, were completed. That payment consisted of a then created property right. See *Ralph W. Street*, 36 B. T. A. 391. That they .called it a permanent directorship does not alter that fact. Thus we have no doubt that the petitioner acquired a valid, enforceable, property right in 1917 and that the income, in its entirety, which the respondent here seeks to tax to him, flowed directly from that right.

The record shows that the petitioner was a mining engineer and promoter; that he, and another, aided in the promotion of the corporation; that these services of petitioner were performed at his domicile, New York, New York, in 1917; that in consideration of such services he was to become, and in fact did become, a permanent director of that corporation, organized in September of that year, and that while there were no written agreements, as such, in the beginning, relating to that relationship, the memorandum of association provided that he should hold that office in recognition of such services "during his life or until he resigns office", for which he was to receive "cash or other assets, equivalent to 2½ per cent. of the cash or other assets" distributed among its members. This amount was later changed by agreement to 1¼ percent. In this connection it is significant to observe that this reduction was brought about by the *voluntary* consent of Oppenheimer, who was another permanent director, and the petitioner. So we find, long prior to taking up his domicile in the State of California, and prior to the effective date of the community property statute of that state— which, for tax purposes, authorizes the division of income from community property—the petitioner performed valuable services, in consideration for which the corporation carved out and vested in him a definitely specified percentage of the corporation's net assets, when distributed as dividends or otherwise under the contract. The right to these assets was defeasible only by (a) unprofitability of the venture or, perhaps, by reason of two other conditions, pertaining to the office of "director", as shown in article 92 of the articles of association, i. e., bankruptcy or insanity. None of these conditions appears to have occurred. Whether property is that of the community or the separate spouse depends not upon the time of the vesting of the property in the husband, or the receipt of the income therefrom, "but the time of the inception of the rights whereby income is earned." *Sara R. Preston*, 35 B. T. A. 312. See also *John M. King*, 26 B. T. A. 1158; affd., 69 Fed. (2d) 639; *Helen N. Winchester, Administratrix*, 27 B. T. A. 798; *Gouverneur Morris*, 31 B. T. A. 178; *Albert J. Houston*, 31 B. T. A. 188; *Charles A. Shea*, 30 B. T. A. 1265; affd., 81 Fed. (2d) 937, and *Barton T. Bean*, 29 B. T. A. 1261.

The petitioner has cited no law nor court decisions of California— nor do we find any—which would hold the income in question to be that of the community. We are convinced, therefore, upon the facts, that such income was derived from a separate property right of the petitioner acquired prior to July 29, 1927, and that the respondent correctly so held.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*